UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                                    Case No. 8:08-bk-18672-MGW
                                                          Chapter 11
Ernie Haire Ford, Inc.,

    Debtor.
_____/

## MEMORANDUM OPINION SUPPLEMENTING
## ORAL RULING GRANTING THE DEBTOR'S MOTIONS
## TO COMPEL LENDERS TO COMPLY WITH CONTRACTS

Chapter 11 debtors in possession may not assume executory contracts that are agreements to extend financial accommodations to or for the benefit of the debtor. 11 U.S.C. § 365(c)(2) (2008). In this case, as of the date of the petition, the Debtor, Ernie Haire Ford, Inc. ("Ernie Haire Ford" or "Debtor"), and several third-party automobile finance companies, ("Auto Finance Companies"),[1] were parties to contracts setting forth the terms under which the Auto Finance Companies could purchase retail installment sales contracts originated by Ernie Haire Ford in connection with the sale of automobiles to consumers ("Contract Purchase Agreements"). Soon after the filing of the bankruptcy, the Auto Finance Companies terminated their individual Contract Purchase Agreements with Ernie Haire Ford, without seeking relief from the stay, on the basis that the Contract Purchase Agreements are non-assumable contracts to extend financial accommodations. Following the Eleventh Circuit's *Hamilton* decision, it is the Court's conclusion that the

---

[1] The Debtor filed emergency motions to compel seven third-party automobile finance companies to comply with their contracts with the Debtor. (Doc. Nos. 54-60.) Two of the respondents filed responses to the motions (Doc. Nos. 120, 124), and all seven were represented by counsel at the hearing. The Debtor's dispute with Aimbridge Indirect Lending was resolved prior to the hearing (*See* Agreed Order Granting Debtor's Motion to Compel, Doc. No. 176). The Motion directed at Capital One Auto Finance (Doc. No. 55) was withdrawn in open court also based on an agreement between the parties. Therefore, at the hearing, the Debtor went forward on the motions directed to JP Morgan Chase Auto Finance, Wells Fargo Auto Finance, Bank of America, N.A., Harris Bank, N.A., and Huntington National Bank.

Contract Purchase Agreements are not agreements to extend financial accommodations to the Debtor, and, therefore, may not be terminated absent relief from stay, pending the Debtor's assumption or rejection of the contracts. *See In re Thomas B. Hamilton Co.*, 969 F.2d 1013, 1018-22 (11th Cir. 1992).

Additionally, all of the Contract Purchase Agreements have terminable-at-will provisions. The Auto Finance Companies argue that they may terminate the contracts at any time and for any reason pursuant to those provisions. However, under Florida law, a terminable-at-will provision can only be exercised in good faith in accordance with the parties' reasonable commercial expectations. *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097-98 (Fla. 1st DCA 1999). The termination of these contracts solely because Ernie Haire Ford filed for chapter 11 protection is not in good faith, as it is a direct violation of the explicit congressional policy behind 11 U.S.C. § 365(e), which invalidates bankruptcy or *ipso facto* termination clauses. *In re B. Siegel Co.*, 51 B.R. 159, 163 (Bankr. E.D. Mich. 1985). The Auto Finance Companies must continue to do business with Ernie Haire Ford under the Contract Purchase Agreements absent an order granting relief from stay, pending the Debtor's assumption or rejection of the agreements.[2]

### FACTUAL BACKGROUND

Simply stated, the relationship between the Debtor and these Auto Finance Companies can be described as follows. Ernie Haire Ford, in the ordinary course of business, agrees to sell a car to a customer who needs financing. In such cases, Ernie Haire Ford negotiates a retail installment sales contract ("Consumer Contract") with the

---

[2] This memorandum opinion is issued to supplement the Court's oral ruling. Orders were previously entered consistent with this opinion. (*See* Doc. Nos. 170, 171, 172, 173, 268).

customer setting forth the terms under which the customer will pay for the car. In addition, Ernie Haire Ford obtains from the customer the financial information needed to assess the customer's creditworthiness. This information is packaged together and "shopped" by the dealership's finance department to the various Auto Finance Companies. The Auto Finance Companies have discretion as to whether to enter into each individual transaction. They assess the creditworthiness of the individual purchaser of a vehicle, and if the terms are otherwise acceptable (presumably by fitting some internal criteria) they may purchase the Consumer Contract.

An Auto Finance Company that elects to purchase a Consumer Contract will then pay to Ernie Haire Ford an amount sufficient to pay the balance owed on the car together with a commission to Ernie Haire Ford for originating the Consumer Contract. The Auto Finance Company then becomes the holder of the Consumer Contract. As such, the consumer makes the installment payments directly to the Auto Finance Company. If the customer defaults under terms of the Consumer Contract, the Auto Finance Company has recourse only against the consumer. The Contract Purchase Agreements provide no recourse back to Ernie Haire Ford, except in the limited circumstance of a claim for breach of warranty based on the failure of Ernie Haire Ford to properly complete the commercial paper. The Auto Finance Companies have not alleged any such problems with Ernie Haire Ford. Rather, it appears that these relationships were perceived to be advantageous by the Auto Finance Companies up to the filing of the bankruptcy.

The Contract Purchase Agreements also contain termination clauses, which provide that either party may terminate the agreement at any time, upon a certain number of days' notice. The clauses in each agreement are similar in that they contain no

requirement of cause, no standard, and simply give either party the right to terminate upon proper notice, as defined by the termination clause.

Days after the filing of its chapter 11 case, Ernie Haire Ford was contacted by representatives of each of the Auto Finance Companies and informed that the Ernie Haire Ford account was being deactivated. In other words, the Auto Finance Companies would no longer provide financing to any customer wishing to purchase a vehicle from Ernie Haire Ford. The Auto Finance Companies indicated that they were terminating their Contract Purchase Agreements with the Debtor because it was their "policy." Based on the proximity of the terminations to the bankruptcy filing, it appears that this "policy" is to terminate Contract Purchase Agreements when a dealer files for bankruptcy. Thus, the only reason for the termination was the filing of the Debtor's chapter 11 bankruptcy.

### CONCLUSIONS OF LAW

While there is some dispute on the question of whether the agreements between Ernie Haire Ford and the Lenders are executory contracts, applying well-settled law, the Court concludes that the Contract Purchase Agreements are clearly executory contracts governed by § 365. *In re Gen. Dev. Corp.*, 84 F.3d 1364, 1374 (11th Cir. 1996); *see also In re Thomas B. Hamilton Co.*, 969 F.2d at 1018. The more significant question is whether the Auto Finance Companies have the right to terminate the contracts under the circumstances of this case. This dispute centers on three issues.

The first issue is whether the Contract Purchase Agreements, under which the Auto Finance Companies purchase the Consumer Contracts, are agreements to extend financial accommodations to the Debtor and therefore not assumable under 11 U.S.C. § 365. The second issue is whether, even if the Contract Purchase Agreements are not

4

agreements to extend financial accommodations to the Debtor, the Auto Finance Companies may nevertheless invoke their right to terminate the contracts for no other reason than that they do not wish to do business with a debtor in bankruptcy. The third issue is whether, even if not permitted to explicitly terminate the contracts, the Auto Finance Companies may functionally terminate their agreements, either through the deactivation of the Ernie Haire Ford account or by exercising their discretion to reject every individual transaction submitted by Ernie Haire Ford.

This Court has jurisdiction under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

### Financial Accommodations Contracts

Section 365(c)(2) provides that a trustee (in this case the debtor in possession) may not assume an executory contract if the contract is "a contract to make a loan, or to extend other debt financing or financial accommodations, to or for the benefit of the debtor . . . ." Additionally, § 365(e)(2)(B), which invalidates bankruptcy *ipso facto* default clauses, does not apply if a contract is a financial accommodations contract. In this respect, the Auto Finance Companies argue that the Contract Purchase Agreements are agreements to extend credit to the consumer purchasers "for the benefit of the [D]ebtor" in that these arrangements facilitate the sale of cars by the Debtor. § 365(c)(2).

The Bankruptcy Code does not define what a "financial accommodations" contract is. Therefore, the courts have created guidelines to determine whether a given contract falls within the scope of this code section. The Eleventh Circuit has held that § 365(c)(2) must be strictly construed, and that it "does *not* apply to all contracts that involve the extension of credit." *In re Thomas B. Hamilton Co.*, 969 F.2d at 1018-19

(emphasis in original). If the extension of credit is merely incidental to the larger contractual arrangement involving the debtor, then the contract is not a financial accommodations contract. *Id.* at 1019. Under this narrow reading, only when the "principal purpose" of a contract is "to extend financing to or guarantee the financial obligations of the debtor" is the contract a non-assumable contract to extend financial accommodations under § 365(c)(2). *Id.* at 1018.

A broad interpretation of the provision would lead to absurd results. As the Eleventh Circuit has noted, a broad interpretation of the provision could "turn every contract where the debtor owed money into a contract for financial accommodations and would allow the exception to swallow the rule." *Id.* at 1019 (quoting *In re The Travel Shoppe, Inc.*, 88 B.R. 466, 470 (Bankr. N.D. Ga. 1988). The Seventh Circuit has also pointed out that "almost every lease and other executory contract has some provision that could be characterized as a short-term loan to one side or the other. Credit is implied whenever performance is not simultaneous . . . ." *In re United Airlines, Inc.*, 368 F.3d 720, 724 (7th Cir. 2004). A strict interpretation of the provision is also consistent with the legislative history, which indicates that the provision "is not intended to embrace ordinary leases or contracts to provide goods or services with payments to be made over time." *In re Thomas B. Hamilton Co.*, 969 F.2d at 1018 (quoting 124 Cong. Rec. H11089 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6436, 6447; 124 Cong. Rec. S17406 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6505, 6515). The Eleventh and Seventh Circuits agree that the court must examine the "true legal nature" of the agreement, *id.* at 1020 (quoting *In re Wills Travel Serv., Inc.*, 72 B.R. 380, 382 (Bankr.

M.D. Fla. 1987), and not "hunt for features that look like loans or guarantees." *In re United Airlines, Inc.*, 368 F.3d at 724.

Because this Court finds the Eleventh Circuit's *Hamilton* decision to be controlling, a more thorough discussion of the opinion is warranted. *Hamilton* dealt with a situation very similar to the facts in this case. In *Hamilton*, the contract in question was a credit card processing agreement between the debtor, who was a merchant selling goods, and a card-processing bank, which allowed the debtor to process credit card sales. 969 F.2d at 1014. The debtor's customers would use credit cards to purchase products. *Id.* at 1015. The debtor would receive payment from the card-processing bank, and the card-processing bank would receive payment, through the Visa and MasterCard system, from the customer's card-issuing bank. *Id.* Under this arrangement, all liability in the event of default in payment attached to the customers under their agreements with their card-issuing banks. Under certain situations, for example in the case of a defective good, at the instruction of the customer, the card-issuing bank may "charge back" a payment to the card-processing bank. *Id.* at 1016. The merchant may then be liable to the card-processing bank for the chargeback amount. *Id.* The ability to charge back creates a potential for liability on the part of the merchant, and may create a credit transaction between the merchant and the card-processing bank. *Id.* at 1017.

In *Hamilton*, the card-processing bank sought to terminate its agreement with the debtor merchant because it did not want to do business with a debtor in bankruptcy. *Id.* at 1017-18. The bank argued that the agreement to process credit card sales was a financial accommodation contract that could not be assumed by the debtor. *Id.* The Eleventh Circuit affirmed the decisions of the courts below and held that the agreement to

process credit card transactions was not a financial accommodations contract, because the principal purpose of the contract was not to extend debt financing to the debtor. *Id.* at 1020-21. In so holding, the Eleventh Circuit emphasized that policy considerations supported the decisions: "If these agreements may not be assumed by the trustee following a bankruptcy filing, rehabilitation will be virtually impossible for any merchant who relied heavily on credit card sales." *Id.* at 1020.

The contracts before the Court in this case fall squarely within the holding of *Hamilton*. There is no functional or economic distinction between the contractual relationship here and the situation in *Hamilton*. It is also relevant to this Court's holding that the Hamilton case arose out of agreements between the debtor and the banks that were terminable at will. *In re Thomas B. Hamilton Co.*, 115 B.R. 384, 385 (Bankr. N.D. Ga. 1990), *aff'd*, No. 1:90-CV-1727-MHS (N.D. Ga. Nov. 29, 1990), *aff'd*, 969 F.2d 1013 (11th Cir. 1992).

Another case that closely mirrors the facts in this case is *In re Best Products Company*. 210 B.R. 714 (Bankr. E.D. Va. 1997). In *Best Products*, under its contract with the debtor, a bank provided financing to the debtor's customers by issuing "BestCards" pursuant to Best Products customer applications. *Id.* at 717. Noting that liability under the BestCard arrangement ran between the debtor's customers and the bank, the *Best Products* court held that this contract was not a financial accommodations contract. *Id.* The court pointed out that "in nearly every instance where a financial accommodation has been found to exist, the debtor has been directly or secondarily liable for the debt incurred." *Id.* In *Best Products*, as in this case, the debtor was neither directly nor secondarily liable for the debt incurred by the customers of the debtor.

The legislative history of § 365(c)(2) indicates that Congress intended, by adding the financial accommodations provision, "to make it clear that a party to a transaction which is based upon the financial strength of a debtor should not be required to extend new credit to the debtor whether in the form of loans, lease financing, or the purchase or discount of notes." S. Rep. No. 95-989, at 58-59 (95th Cong., 2d Sess. 1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5844-45; *see also* H.R. Rep. No. 95-595, at 348 (95th Cong., 1st Sess. 1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6304 (stating that section 365 is "not designed to permit the trustee to demand new loans"). The purpose was "to avoid forcing a pre-petition creditor to continue to provide financing to a debtor," not to protect parties such as these Auto Finance Companies who provide financing not to the Debtor, but only to third parties. *See In re Boscov's, Inc.*, No. 08-11637, 2008 WL 4975882, *1 (Bankr. D. Del. 2008). Therefore, following *Hamilton* and *Best Products*, it is the Court's conclusion that § 365(c)(2) does not prevent the assumption of these executory contracts by the Debtor.

### The Terminable-at-Will Clauses

Having held that these contracts are assumable, the Court must next consider the effect of the terminable-at-will provisions in these contracts. Essentially, the question is whether the liberal termination provisions in the contracts authorize the Auto Finance Companies to terminate the contracts either by explicit termination notices or effective termination. The answer to this question is found in the interplay of several core concepts and policies of bankruptcy law (specifically the automatic stay and the prohibition of *ipso facto* termination clauses) and the standard applied, under Florida law, to the exercise of such discretionary termination provisions.

9

*The Implied Covenant of Good Faith and Fair Dealing*

Under Florida law, the exercise of a discretionary termination clause, such as the clauses in the contracts between the Auto Finance Companies and Ernie Haire Ford, is subject to the implied covenant of good faith and fair dealing. Florida courts recognize that an implied covenant of good faith and fair dealing exists in all contractual relationships. *Speedway SuperAmerica, L.L.C. v. Tropic Enters., Inc.*, 966 So. 2d 1, 3 (Fla. 2d DCA 2007). *C.f.* Fla. Stat. § 671.203 (likewise imposing "an obligation of good faith" on all contracts and duties under Florida's enactment of the Uniform Commercial Code); U.C.C. § 1-304 cmt. (2004) (What the good faith obligation means is "that a failure to perform or enforce, in good faith, a specific duty or obligation under the contract, constitutes a breach of that contract or makes unavailable, under the particular circumstances, a remedial right or power"); *Cont'l Cas. Co. v. City of Jacksonville*, 550 F. Supp. 2d 1312, 1337 (M.D. Fla. 2007).

The implied covenant under Florida common law is "designed to protect the contracting parties' reasonable expectations" and is imposed even "where the terms of the contract afford a party substantial discretion to promote that party's self-interest." *Cox*, 732 So. 2d at 1097-98. The implied covenant of good faith and fair dealing is "a part of every contract under Florida law." *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1291 (11th Cir. 2001). Generally invoked where a contract does not establish a standard for exercising discretion, the implied covenant requires parties to act in a way that honors the parties' "reasonable commercial expectations." *Publix Super Markets, Inc. v. Wilder Corp. of Del.*, 876 So. 2d 652, 655 (Fla. 2d DCA 2004). However, the implied covenant "cannot override an express contractual term," *Ernie Haire Ford*, 260

10

F.3d at 1291, and does not create an independent cause of action. *Action Nissan, Inc. v. Hyundai Motor Am.*, No. 06-1747, 2008 WL 4093702, *17 (M.D. Fla. Aug. 29, 2008).

Florida's Second District Court of Appeal has held that the implied covenant of good faith and fair dealing does *not* apply where the contract specifically allows termination "for any reason whatsoever." *Terranova Corp. v. 1550 Biscayne Assocs. Corp.*, 847 So. 2d 529, 532 (Fla. 3d DCA 2003). However, the Third District Court of Appeal has held that the implied covenant of good faith and fair dealing *does* still exist even where a contract specifically allows for a decision based on the "sole discretion" of one of the parties, but should be applied under a lower standard. *Sepe v. City of Safety Harbor*, 761 So. 2d 1182, 1185 (Fla. 2d DCA 2000) ("Unless no reasonable party in the position of the City would have made the same discretionary decision the City made, it seems unlikely that its decision would violate the covenant of good faith in this context."). Nevertheless, while these decisions may suggest either a narrow exception or a limitation to the implied covenant of good faith and fair dealing, the contracts between the Auto Finance Companies and Ernie Haire Ford do *not* contain the broad language (e.g., "for any reason whatsoever") that would invoke any such exception or limitation. Therefore, the implied covenant of good faith and fair dealing applies to the contracts between the Auto Finance Companies and Ernie Haire Ford.

*The Prohibition of* Ipso Facto *Clauses*

The termination of the contracts by the Auto Finance Companies under terminable-at-will provisions solely because of the filing of a petition under chapter 11 violates the express congressional policy behind the *ipso facto* provision of § 365(e). Prior to the enactment of the Bankruptcy Code of 1978, clauses that allowed for

termination of a contract in the event of a bankruptcy filing were enforceable. *In re B. Siegel Co.*, 51 B.R. at 164. Many courts noted that the enforcement of such clauses "worked substantial injustice and frustrated the salutary purpose of the reorganization provisions." *Id.* (citing *Queens Blvd. Wine & Liquor Corp. v. Blum*, 503 F.2d 202, 207 (2d Cir. 1974)). In the 1978 Code, the *ipso facto* provision of § 365(e) was added to invalidate *ipso facto* termination clauses in executory contracts. *Id.* Congress acknowledged that the enforcement of *ipso facto* clauses "frequently hampers rehabilitation efforts. If the trustee may assume or assign the contract under the limitations imposed by the remainder of the section, the contract or lease may be utilized to assist in the debtor's rehabilitation or liquidation." S. Rep. No. 95-989, at 59 (95th Cong., 2d Sess. 1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5845; H.R. Rep. No. 95-595, at 348 (95th Cong., 1st Sess. 1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6304. While it is abundantly clear that the Auto Finance Companies could not have exercised a termination clause that allowed for termination upon the filing of a petition, the question faced by this Court is whether the Auto Finance Companies may utilize a terminable-at-will clause *as* an *ipso facto* clause, terminating the contracts with Ernie Haire Ford solely because of the bankruptcy. The courts that have addressed this question have held that a terminable-at-will clause may not be so employed.

The case of *In re B. Siegel Company* involved the cancellation of an insurance policy that was terminable at will. 51 B.R. at 160. Centennial, the insurance company, cancelled the contract because of the filing of an involuntary petition against the debtor. *Id.* at 163. The court noted that § 365(e) was added to the Bankruptcy Code "[t]o enhance the climate for rehabilitation." *Id.* at 164. The court held that the cancellation

contravened an express congressional policy, and, therefore, Centennial did not have the right to cancel the policy for that reason. In sum, "[t]o permit Centennial to rely on the 'terminable at will' clause when the only reason for its invocation is the bankruptcy of the debtor would, for all practical purposes, nullify the remedial policy of section 365(e)(1). A 'terminable at will' clause is not to be so employed." *Id.* The court held also that the cancellation of the insurance contract must comply with the common law duty of good faith, and that to cancel a contract "in violation of an express congressional enactment is not a good faith exercise of a 'terminable at will' provision." *Id.*

The case of *In re National Hydro-Vac Industrial Services, L.L.C.* addressed the exercise of a termination clause in a credit card processing agreement that allowed either party to terminate the agreement "at any time, without cause and for any reason whatsoever, effective immediately upon notice of termination given to the other party hereto." 262 B.R. 781, 783 (Bankr. E.D. Ark. 2001). The non-debtor bank terminated the agreement because of the bankruptcy. *Id.* at 784. The bankruptcy court found that the caselaw supported the debtor's position that "to enforce the clause in this case would violate the Congressional policy undergirding 11 U.S.C. § 365(e)(1)." *Id.* at 786. Citing *B. Siegel*, the bankruptcy court held that terminating the contract for no other reason than the filing of the bankruptcy petition indicated bad faith on the part of the bank. *Id.* at 787. Because a terminable-at-will provision in a commercial contract must be exercised in good faith, the termination was not permissible. *Id.* The court noted that if the debtor were no longer able to accept credit card payments, it could result in the loss of a significant customer and hinder the debtor's ability to attract new business. *Id.* at 788.

This Court finds the reasoning in *B. Siegel* and *National Hydro-Vac* persuasive. Employing a terminable-at-will provision as a de facto *ipso facto* provision, in violation of § 365(e)(2) and the explicit congressional policy against *ipso facto* terminations, is an impermissible exercise of discretion and violates the common law implied covenant of good faith and fair dealing. Although the termination provisions in this case give the Auto Finance Companies discretion to terminate their contracts with Ernie Haire Ford, that discretion may only be exercised in accord with the contracting parties' expectations. *See Ernie Haire Ford*, 260 F.3d at 1291. The Auto Finance Companies cannot act capriciously to contravene the reasonable commercial expectations of Ernie Haire Ford. *See id.* The Auto Finance Companies' functional termination of these contracts based solely on the filing of a petition for chapter 11 reorganization is in clear contravention of the express congressional intent behind § 365(e)(2). If the Auto Finance Companies had included a provision in these contracts that allowed for termination upon the filing of a bankruptcy, those provisions would, without question, be invalid under § 365(e)(2). As broad as the Auto Finance Companies' discretion to terminate these contracts is, employing a terminable-at-will provision as an attempt to circumvent a clear provision of the Bankruptcy Code and side-step explicit congressional policy is not a permissible exercise of that discretion.

*The Automatic Stay*

The Auto Finance Companies' attempted cancellation of these contracts through the deactivation of the Ernie Haire Ford accounts is impermissible and invalid for another reason. Ernie Haire Ford's rights under these executory contracts are property of the bankruptcy estate, and, therefore, exercising a terminable-at-will provision is not

permitted without relief from stay. *See Computer Commc'ns, Inc. v. Codex Corp. (In re Computer Commc'ns, Inc.)*, 824 F.2d 725, 730 (9th Cir. 1987) (affirming the bankruptcy court's award of $4.75 million in actual damages and $250,000 in punitive damages for the violation of the automatic stay by unilaterally terminating a contract without first obtaining relief from stay). Because actions in violation of the automatic stay are void and without effect, any attempted termination, absent relief from stay, is invalid.[3] *Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir. 1982) ("Actions taken in violation of the automatic stay are void and without effect."); *see also Pester Ref. Co. v. Ins. Co. of N. Am. (In re Pester Ref. Co.)*, 58 B.R. 189, 191-92 (Bankr. S.D. Iowa 1985).

### Functional Termination

Finally, the Auto Finance Companies argue that even if they are not allowed to deactivate the Ernie Haire Ford account or terminate the contract, they also have complete discretion under the contracts to accept or reject any individual loan application from an Ernie Haire Ford customer. In exercise of that discretion, the argument goes, can they not simply refuse any application from an Ernie Haire Ford customer? For the reasons stated above, these agreements cannot be terminated by the Auto Finance Companies without relief from stay. *Computer Commc'ns, Inc.*, 824 F.2d at 730. Rejecting every Consumer Contract that Ernie Haire Ford generates, while accepting similar contracts meeting certain objective standards from other dealers, effectively terminates the agreements in violation of the automatic stay. *Daewoo Motor Am., Inc. v.*

---

[3] The Auto Finance Companies have argued that they do not need to give any "cause" for termination of their contracts with Ernie Haire Ford. The Court has rejected their argument and ruled in favor of the Debtor. However, if the Auto Finance Companies believe that there are acceptable grounds for termination of the contracts, apart from the filing of the bankruptcy, they may present such ground in an appropriately filed motion for relief from stay.

*Gen. Motors Corp.*, 459 F.3d 1249, 1264 (11th Cir. 2006) (asserting that the automatic stay bars "any other persons or entities from attempting to obtain possession of or exercise control over" the property of the debtor). Additionally, the implied covenant of good faith and fair dealing likewise applies to the Auto Finance Companies' exercise of discretion in this context, and the rejection of every Consumer Contract produced by Ernie Haire Ford without regard to the merits of the individual transaction is a violation of that implied covenant. *See Ernie Haire Ford*, 260 F.3d at 1291.

While these agreements are in full force and effect, the parties are bound by their terms and must continue to operate under the agreements in good faith. The Auto Finance Companies continue to have the right to review each Consumer Contract on a case-by-case basis and apply the same objective standards to each individual transaction that they always have. However, the bankruptcy of Ernie Haire Ford cannot be the reason for rejecting every Consumer Contract without regard to the merits of the individual transaction, with the result of effectively terminating the Contract Purchase Agreements in violation of the automatic stay.

## CONCLUSION

For the reasons stated above, the Court concludes that the Debtor's motions should be granted. The Contract Purchase Agreements between Ernie Haire Ford and the Auto Finance Companies remain in effect pending the Debtor's final decision for assumption or rejection, subject to approval by the Court, or unless and until relief from

stay is granted. Relief from stay is required in this case either to explicitly terminate these agreements or to functionally do so by deactivating the Ernie Haire Ford accounts.[4]

**DATED** in Chambers at Tampa, Florida, on  April 8, 2009 .

/s/ Michael G. Williamson
Michael G. Williamson
United States Bankruptcy Judge

Copies to be provided by CM/ECF service.

---

[4] In the cases where a transaction had been accepted by one of the Auto Finance Companies prior to the bankruptcy, but was rejected after the bankruptcy, the Court concludes that it is appropriate to order the Auto Finance Companies to complete the transactions within the standard time-frame for closing such transactions in the ordinary course of business, which counsel represented is within 48 hours.